## Fred Walkau v. Manitowoc Seating Co.

1.  PROMISSORY NOTES—*Purpose for Which Given.*—Whether promissory notes are given to release or abrogate a precedent contract is a question of fact for the jury.

2.  CAVEAT EMPTOR—*Applies to Judicial Sales.*—The rule of *caveat emptor* applies to all judicial sales.

3.  SALES—*Seller Reserving Title to Property May Assert it at Any Time.*—A seller reserving the title to the property on a sale until consummation thereof by the buyer may assert his title at any time when the rights of a judgment creditor or an innocent purchaser have not intervened to prevent the same.

Replevin.—Appeal from the Circuit Court of McLean County; the Hon. COLOSTIN D. MYERS, Judge presiding. Heard in this court at the May term, 1902. Affirmed. Opinion filed November 1, 1902.

FRANK B. McKENNAN and WELTY & STERLING, attorneys for appellant.

LIVINGSTON & BACH, attorneys for appellee.

MR. PRESIDING JUSTICE WRIGHT delivered the opinion of the court.

Appellee began its action of replevin against appellant and caused the writ to be levied upon a lot of opera chairs, in three counts of the declaration alleging its property in the chairs; and pleas of general issue and of property in appellant were filed.   Upon a trial of the issues by jury, the verdict and the judgment of the court were entered against the appellant for a return of the property and for $41 as damages; and the court having overruled appellant's motion for a new trial he prosecutes this appeal to effect reversal of such judgment, and it is argued that the court admitted improper evidence, erred in its instructions to the jury and that the verdict is not supported by the law and the evidence.

The evidence discloses that the Bloomington Coliseum Association, incorporated, bought of appellee an outfit of opera chairs for use in its building, and a written contract was executed by them, November 18, 1898, providing that appellee should supply the chairs ready for use on board cars at Bloomington on or before December 22, 1898; that the Coliseum Association should advance the money for transportation charges, for drayage and for setting up the chairs, and should pay the balance of $1,200, the consideration, one-third cash, thirty days after chairs were received, one-third in three months and the remainder, less $100, six months after receipt of goods, deferred payments to bear interest at six per cent from maturity; and a non-negotiable note for $100 payable two years after date with six per cent interest at the bank in Bloomington.   The instrument further provided that the furniture described should remain the property of the appellee until fully paid for as specified, this being the contract produced by appellee.   Appellant also, upon the trial, produced a like instrument, duplicating

that of appellee, except that it expresses an agreement for payment to appellee of the $1,200 upon completion of the work, or to settle for same upon completion by negotiable notes as follows : proceeding to duplicate the other in the matter of payments; and upon the back of the instrument produced by appellant appears an indorsement over the name of appellee, by Murphy, its manager, to the effect that appellee had received in November, 1899, from the Coliseum Association, three promissory notes for $200, $200 and $300 respectively, in full settlement of the balance on the " within contract." There was a controversy at the trial as to whether the part of the instrument offered by appellant omitted from the instrument offered by appellee was a part of the real contract. Robinson, secretary of the Coliseum Association, testifies that he drew the instruments at the dictation of Hubbard, appellee's agent, and that the one produced by appellee was the original and the one produced by appellant was copied from it; and Murphy, manager' for appellee, testifies that the instrument was in his possession and control continuously, and that it was not changed nor interlined. This testimony was uncontradicted by any proof in the case and it was for the jury to say from all the evidence which instrument correctly described the contract in controversy. The jury seems to have considered appellee's instrument as correct; and we can not say they were unwarranted in so doing; the verdict is therefore decisive of that question.

The chairs were delivered by appellee and set up by the Coliseum Association and evidence is introduced tending to show that the chairs were considered satisfactory at first, but it was discovered by the Coliseum Association that the chairs needed certain other fixtures, and for this reason the association declined settlement with appellee until such fixtures were furnished. The negotiations concerning this adjustment were carried on until November 11, 1899, when the fixtures were furnished and a payment of $337.41 was made in cash to the appellee, and three notes, as designated, were given to appellee in settlement, as it is contended, of the balance of the purchase price of the chairs, less a dis-

count allowed by appellee during the negotiations, and it is the receipt for these notes that appears indorsed upon the back of the instrument produced by the appellant as the contract of purchase. Appellee contends that it did not agree to and did not in fact accept these notes and release the contract, but that the notes were collateral; and if in truth it did not, such contract would not be so released or abrogated. At a meeting of the directors of the Coliseum Association on October 12, 1899, the secretary was directed to execute these notes to the appellee for the company, and upon the receipt of the needed fixtures from appellee, to deliver the notes to it in full settlement of the contract. This action appears to have been voluntary on the part of the association, and the burden is upon appellant to show that its action was accepted by appellee or reciprocated by it in some manner binding as a release of the association from the obligations of its contract. Whether or not this was accomplished was a question for the jury; and it is only our province to discover whether the jury were warranted in finding, as they did, that no such release of the contract was effected. In the first place it does not appear that any such action as the execution and delivery of these notes was requested or sought by appellee. In the second place appellee dealt with the notes as testified by Murphy, who said that on receiving notice that the notes were at the bank he went there and the notes were handed him, together with another paper on which he was directed to sign a receipt for the notes. This he hurriedly signed without reading; and as it appears, is the indorsement on the duplicate contract mentioned and offered by appellant. Then taking the notes, he indorsed upon them in effect that they were secured by the contract with the Coliseum Association, pinned them to appellee's contract and laid them away. From these circumstances we can not say the jury was not warranted in the conclusion that the contract was not released and abrogated by these notes; and we consider the determination of the jury decisive of that question. Archibald v. Argall, 53 Ill. 307. And the mere

giving and acceptance of the notes is not conclusive evidence that all demand upon the contract was settled. Wheelock v. Berkeley, 138 Ill. 153, and cases cited.

Appellant was a director of the Coliseum Association during the time the negotiations were pending and conferred with appellee concerning these notes and the contract. In various meetings of the board of directors attended by him the matters were discussed, correspondence was read and action thereon taken by the directors; and he was there when the notes were ordered to issue. From all the circumstances in evidence, including the fact that appellant did not deny the knowledge of the various transactions and of appellee's claim, we think the jury were warranted in finding that appellant was either in actual knowledge of the facts in controversy or that he was so put on inquiry as to be bound the same as if he knew them; he could have ascertained them by proper inquiry. A creditor of the Coliseum Association having obtained judgment upon his debt, the property in controversy was levied upon by execution and offered for sale, and the same was purchased and reduced to possession by appellant and a portion of the property was sold by him, of the value, as the jury found, of $41. The remainder of this property was taken by the writ of replevin. If appellee had the rights claimed in this property they were not cut off by the sheriff's sale, unless the sale was made to the execution creditor or some other person in the capacity of innocent purchaser; for the rule of *caveat emptor* applies to all judicial sales (Tilley v. Bridges, 105 Ill. 336), and the finding of the jury that appellant was not an innocent purchaser at that sale, but that he became such purchaser with knowledge, or chargeable with it, of the appellee's claim, we think was warranted, and conclusive upon appellant; and so the question of what would be done were he an innocent purchaser does not arise.

But it is insisted that the levy of the execution of the judgment creditor vested a property right in the creditor (who was such without notice of appellee's claim) so that a

sale under the execution to one having notice of appellee's claim would be protected the same as if the sale was made to such execution creditor himself. To hold this to be the law would do violence to the rule as we understand it. While the execution creditor is so far protected that the property, if once reduced to his possession by the sale to himself under his own execution, is discharged of an adverse claim of which he had no notice, so that one in possession of knowledge of the adverse claim, or chargeable with it, may take the property so discharged, it is unnecessary to say, and we do not understand that the authorities go so far as to hold, that without the intervention of title in some one who is an innocent purchaser, the other may stand in his place cleared of the notice. Appellant was in no sense compelled to buy at the execution sale. Indeed, had he not done so, no doubt is entertained the execution creditor would have bid it in and taken the property when it could have been purchased by appellant freed from appellee's claim. In the manner of the transaction we can not escape the conclusion that appellant took the property subject to the claim of appellee, if that is a valid claim.

Numerous authorities are presented by appellant upon the proposition that the reservation of title to the seller in a contract of sale of personal property until the buyer shall complete the terms of sale, and where the buyer is invested with *indicia* of ownership, will not operate to the benefit of the seller against creditors or innocent pur-chasers; and that to retain his lien to the exclusion of such creditors or purchasers the seller must either retain pos-session or secure his lien by chattel mortgage. That such is the well-settled rule admits of no doubt. But no rights of creditors, except those of appellee and the Coliseum Association, are involved in this suit, and the appellant is effectively found to be no innocent purchaser. We have carefully examined the authorities presented and others, and are compelled to say that we can not find support for the position of appellant on this question. St. Louis Iron and Machine Co. v. Kimball, 53 Ill. App. 636, and Gilbert

v. Gere, 67 Ill. App. 590, are among those presented by appellant. In the first an execution creditor upon a sale under his execution took the property, and the appellant was held to lose its lien for unpaid purchase money on the same thereby, even though the creditor had some knowledge of the contract of sale and the reservation of the lien. In the second case also, a judgment creditor bought the property at sale under his execution, and again it was held that the lien of the seller was lost against such creditor, even though an agent of the creditor had information that some person, not disclosed, had or claimed a lien on the property. But here appellant occupies no such ground as a creditor, and as we have before said, a very different question is presented by the rights of such creditor, the law as to such creditor's rights being well defined and distinct. It has been held in effect, in Hooven, etc., Co., v. Burdette, 153 Ill. 672, that a seller reserving the title to the property on a sale until consummation thereof by the buyer, may assert his title at any time when the rights of a judgment creditor (or an innocent purchaser) have not intervened to prevent the same. We think that in this case no such rights have intervened and that the lien of appellee is capable of attaching to the property as against the appellant; it was no secret to him.

We have carefully examined the rulings of the court on the admission and rejection of evidence and its rulings on the instructions complained of, and are constrained to say that no prejudicial error occurred in either.

Finding no reversible error the judgment of the Circuit Court is affirmed.